## GROS v. UNITED STATES.

### No. 10165.

Circuit Court of Appeals, Ninth Circuit.

June 21, 1943.

Morris Lavine, of Los Angeles, Cal., for appellant.

Howard V. Calverley, Asst. U.S. Atty., of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment sentencing appellant to the penitentiary for five years on one count of an indictment charging appellant to be an agent of the German Government and failing to register as such an agent in violation of the Act of June 15, 1917, c. 30, Title VIII, § 3, 40 Stat. 226, 22 U.S.C.A. § 233; and for ten years, running concurrently with the first sentence, on a second count charging appellant with conspiring with his wife, Frances Gros, before and after marriage, and another, to disclose unlawfully to the German Reich information affecting the National Defense in violation of the Act of June 15, 1917, c. 30, Title I, § 4, 40 Stat. 219, 50 U.S.C.A. § 34. Appellant waived his jury and the case was tried by the district judge.

Appellant, born in the United States in 1908, was taken to Austria when nine years of age and remained there and in Germany until 1938, when he returned to the United States. The testimony concerns appellant's conduct from July, 1939, to the procuring of his confession, hereafter considered. There is conflicting evidence concerning his commission of the charged crimes and, in the absence of the confession introduced at the trial, an acquittal on both counts was possible.

The confession is a single-spaced typed eleven-page document of over four thousand words. The testimony of appellant as to how it was procured from him is stated in the footnote.[1] It was not contradicted in any material matter.

Agents of the Federal Bureau of In-

---

[1] Gros' testimony in narrative form is, " * * * that he was questioned by the F. B. I. for seven days; that he did not totally or thoroughly read it [his confession] over before signing; that he was too tired to do so; that he had been for seven days in the field office of the F. B. I.; that he is suffering from nervousness; that before he left Germany an officer of the S. S. [meaning Security Service, an organization started by the Reich Feuhrer and Heinrich Himmler] came to see him and told him that sometimes accidents happened to people and that an accident could happen to him; * * * that it looks like he made corrections in the document but he does not recall them; that he read it and made corrections on it but does not recall reading it over thoroughly; that he does not recall what time of the day it was signed; that they treated him all right at the F. B. I. office, fed him and gave him opportunities to rest but they questioned him quite long and he wasn't in such good condition; that he did not know the F. B. I. or the type of organiza-

tion it was but judged from European organizations that secret government police are very doubtful and he was afraid that they might torture her [his wife] if he didn't sign anything they wanted him to; that he doesn't say that they would torture him but when he was arrested he didn't know anything about the F. B. I. but took it for granted that they might attempt to torture her; that they had him sign a document which indicated that he was willing to go into their custody but that the Gestapo worked the same way; that they did not threaten him with bodily harm; that they treated him all right, gave him his meals; that he was put in a detention cell; that there were always F. B. I. men in front of the cell; that they talked the whole matter over with him including his life's history; that they took notes during the conversation, then wrote the statement out and he signed it and he read it before he signed it and made certain corrections in it; that there were some things that were not quite right; that he didn't know what was really going on; that he didn't have

880

vestigation, on January 21, 1942, testified they had a warrant to arrest Dr. Gros for violation of the Selective Service Act, of which. he waived the service. They took him into their custody and confined him for a week in a cell in their field office building in Los Angeles, California. He had not been before and was not taken before a committing magistrate during that period, as required of the arresting officers by 18 U.S.C.A. § 595.

The confession was signed on January 26th, after questioning by several investigators for many hours daily over the five days. Sometimes he was taken to the Bureau's office for the interrogations. Much of the time several investigators stood before his cell door and there interrogated him. No friend or counsel was permitted to visit him while he was so imprisoned.

The only freedom from his confinement in his cell was in trips to a restaurant for his meals and to the office of the Bureau for questioning. No. bodily harm was inflicted other than the cell confinement, and the continued pressure of questioning was without rudeness of manner.

■ Appellant's belief that his imprisonment in the cell seemed like the Gestapo methods of which he had heard in Germany, is based upon a warrantable inference. No stronger facts need be stated to show the lack of evidentiary value in Anglo American jurisprudence of a confession so pressed from a cell-confined man over a period of five days.

At the time of the trial, the Circuit Court of Appeals for the Sixth Circuit had rendered its decisions in McNabb v. United States, 123 F.2d 848, and Anderson v. United States, 124 F.2d 58, holding that confessions, procured as in this case, were admissible against the charge of coercion in their procurement. Appellant made no ob-

jection to the admission of his confession on that ground.[2] It was not urged as error in appellant's brief. Eleven days before the hearing here, the Supreme Court reversed these decisions in McNabb v. United States, March 1, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——, and Anderson, et al. v. United States, March 1, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. ——.

At the hearing this court sua sponte noticed the admission of appellant's confession as obtained during his imprisonment by the officers of the Federal Bureau of Investigation, six days after they should have taken him before a committing magistrate. Appellant adopted the court's suggestion and relied upon the McNabb and Anderson decisions of the Supreme Court.

It is contended that such error, though going to the vitals of a defendant's rights in a criminal case, may not be considered by an appellate court where not raised at the trial. In Wiborg v. United States, 163 U.S. 632, 658, 16 S.Ct. 1127, 1137, 1197, 41 L.Ed. 289,[3] the Supreme Court has held to the contrary. There the claim of error was not presented to the trial court and came on for consideration for the first time on appeal. The Supreme Court held: "No motion or request was made that the jury be instructed to find for defendants, or either of them. Where an exception to a denial of such a motion or request is duly saved, it is open to the court to consider whether there is any evidence to sustain the verdict, though not to pass upon its weight or sufficiency. And, although this question was not properly raised, *yet if a plain error was committed in a matter so absolutely vital to defendants,* we feel ourselves at liberty to correct it." (Emphasis supplied.)

■ It is obvious that it is immaterial in a court of justice whether the court sua sponte first recognizes and calls attention to a plain error "absolutely vital to defend-

any opportunity to contact an attorney or contact anybody; that he didn't know what was going to happen; that if you are picked up by secret police when you don't know anything about it and when you know the secret police is a doubtful organization from living in Europe, you could expect anything could happen if you don't sign anything they wanted; that he had a few corrections but that they would not agree to have him make other corrections that he desired; that he made a request to be given an opportunity for further corrections but he is not

certain as to what; that after seven days he was so worn mentally that he would have signed anything that they gave him; that he knows from glancing through the document that it is only partially true but not all true; that he read it in a few minutes, that is, two or three minutes; * * *."

2 The only objection made was that the corpus delicti was not otherwise shown.

3 United States v. Eide, 9 Cir., 88 F. 2d 682; United States v. White, 9 Cir., 77 F.2d 757.

ants" and that appellant's counsel then urges it, or that counsel first calls the appellate court's attention to the vital error.

We therefore consider it irrelevant that in the NcNabb and Anderson cases the objection that the confessions were obtained by coercion was made at the trial. In the McNabb case in the Supreme Court, appellants urged that such coercion violated the Fifth Amendment. That Court declined the consideration of the coercion on this constitutional ground and, apparently sua sponte, considered it under the principle that "Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force." 318 U.S. 332, 63 S.Ct. 613, 87 L.Ed. ——.

Applying this principle, the Supreme Court states and holds of convictions based on confessions produced, as in this case, by continued questioning of wrongly imprisoned men,

"The circumstances in which the statements admitted in evidence against the petitioners were secured reveal a plain disregard of the duty enjoined by Congress upon federal law officers. Freeman and Raymond McNabb were arrested in the middle of the night at their home. Instead *of being brought before a United States Commissioner or a judicial officer, as the law requires, in order to determine the sufficiency of the justification for their detention, they were put in a barren cell and kept there for fourteen hours. For two days they were subjected to unremitting questioning by numerous officers. Benjamin's confession was secured by detaining him unlawfully and questioning him continuously for five or six hours. The McNabbs had to submit to all this without the aid of friends or the benefit of counsel. The record leaves no room for doubt that the questioning of the petitioners took place while they were in the custody of the arresting officers and before any order of commitment was made. Plainly, a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in wilful dis-*

*obedience of law.* Congress has not explicitly forbidden the use of evidence so procured. But to permit such evidence to be made the basis of a conviction in the federal courts would stultify the policy, which Congress has enacted into law.

\*  \*  \*  \*  \*

"In holding that the petitioners' admissions were improperly received in evidence against them, and that having been based on this evidence their convictions cannot stand, *we confine ourselves to our limited function as the court of ultimate review of the standards formulated and applied by federal courts in the trial of criminal cases.* We are not concerned with law enforcement practices except insofar as courts themselves become instruments of law enforcement. *We hold only that a decent regard for the duty of courts as agencies of justice and custodians of liberty FORBIDS that men should be convicted upon evidence secured under the circumstances revealed here."* (Emphasis supplied.) McNabb v. United States, 318 U.S. 332, 63 S.Ct. 615, 87 L.Ed. ——.

Here, as in the McNabb case, Gros was not taken before a committing magistrate. Instead of McNabb's confinement for but fourteen hours, Gros' illegal imprisonment was for over five days and in a cell. Instead of the McNabb five hours' questioning, here it was spread over five days and produced the 4,000-word document signed after a hasty reading.

We hold that, however the record may make known to us the facts, "a decent regard for the duty of courts as agencies of justice and custodians of liberty forbids [us to permit] that men should be convicted upon evidence secured under the circumstances revealed here."

The judgment is reversed and a new trial ordered.

Reversed and remanded.

STEPHENS, Circuit Judge (concurring).

In my concurrence I wish to point out that the document signed by appellant is not the only evidence received in the case which comes under the ban of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——.

The officers who kept guard over the appellant during his restraint engaged him in running conversation, and these officers testified to the admissions made during

those conversations. In fact the type-written-signed document termed the confession is but a narrative form of these very admissions. It is apparent that such conversations are the very source of the confession and therefore must be as objectionable as the confession itself. This is not to be confused with admissions made by accused persons at the time of legal arrest or with admissions or confessions made thereafter in the absence of coercion.

In reference to the decisions in McNabb v. United States, supra, and Anderson v. United States, 124 F.2d 58, mentioned in the main opinion, I think it should be stated that the trial court in each of these cases submitted the question of coercion in the procurement of the confession to the jury upon all of the evidence relative to that issue.