**WALEY v. JOHNSTON, Warden.**

**No. 10489.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 7, 1943.

Writ of Certiorari Denied Feb. 28, 1944.

See 64 S.Ct. 617.

Harmon Metz Waley, in pro. per.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and Thos. C. Lynch, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant originated this case by filing his petition for a writ of habeas corpus on January 2, 1941. The application was denied on April 15, 1941. Upon appeal to this court, the judgment was affirmed. Waley v. Johnston, Warden, 9 Cir., 124 F.2d 587.

The United States Supreme Court granted certiorari and thereafter the judgment was vacated and the cause was remanded for a hearing. Waley v. Johnston, 316 U. S. 101, 62 S.Ct. 964, 86 L.Ed. 1302. Upon receipt of the mandate of the United States Supreme Court, the District Court issued the writ of habeas corpus and a hearing was had, and thereafter the District Court entered its order dismissing the writ.

The appellant's contentions are two:

"1. That he had been coerced by intimidation and threats of an agent of the Federal Bureau of Investigation to plead guilty to an indictment for kidnapping, and that he is held in custody by Respondent under the consequent judgment of conviction and commitment.

"2. That no crime was committed in that there was, not interstate transportation of the victim."

Among other things, the District Court found:

"That no threats of any kind or character were made against or to the petitioner by the agents of the Federal Bureau of Investigation or the United States Attorney or his assistant.

"That petitioner's pleas of guilty entered by him before the trial court, as aforesaid, were not entered as the result of any threats made against him or promises made to him by any person whatsoever."

In determining the issues presented, it was necessary and expedient for the District Court, as it is for this court, to have in mind the outstanding facts which entered into and had to be considered in arriving at the findings, conclusions and judgment.

The appellant admits he was part of a conspiracy in furtherance of which he and his associates kidnapped the young son of J. P. Weyerhauser of Tacoma, Washington, kept him a prisoner, and travelled over a considerable portion of the State of Washington, and thereafter released him upon payment of $200,000. He later confessed that in their migrations while they held the boy prisoner they took him into the State of Idaho. This part he now denies. The appellant has a record of the commission of other crimes.

While appellant now denies that the victim was ever taken into the State of Idaho, he admits the kidnapping and generally every other allegation and charge in the indictment. He insists that not having taken the boy into Idaho the federal courts were without jurisdiction, and further, that his plea of guilty was induced by threats and machinations of one Albert Miller, an

agent of the Federal Bureau of Investigation, United States Department of Justice. Besides his plea of guilty, he admits he signed several confessions in which it is recited that he took the victim into the State of Idaho. In his testimony in this hearing, he admits practically all other matters contained in these confessions but insists it was not true that they went into the State of Idaho. As Waley himself put it in his testimony, "the only material and relevant thing to this case as far as that confession is concerned * * * is about going into the State of Idaho." This was again emphasized in petitioner's answer to a question of the trial judge:

"Q. As I understand it, the substance of it is you are denying you went into Idaho. A. That is the whole thing."

The pertinent question to be determined by this proceeding is: Was appellant's plea of guilty induced by threats, intimidation or coercion?

As to having been intimidated into pleading guilty by threats, his story in substance is that he was told by Miller that unless he would admit that the victim had been taken into Idaho, he, Waley, would be turned over to the authorities of the State of Washington which had a statute punishing kidnapping with a death penalty in the event the victim had been harmed in any way. Appellant testified that Miller told him that if he did not plead guilty to transportation in Interstate Commerce, the Federal Press Agents would release propaganda to newspapers and newsmagazines; that these agents were connected with the newspapers and with one Courtney Ryley Cooper who would issue these statements to the newspapers for publication; that this propaganda would state that this boy, George Weyerhauser, was injured in some way; and that they would invent some evidence that he was injured and cause the State of Washington to hang all the defendants, that is, the appellant, his wife and the codefendant Dainard; that the Department of Justice through its influence with the press would cause the people of the State of Washington to believe that he had harmed this Weyerhauser boy, and therefore would make it a capital crime under the laws of the State of Washington; that it would be better for him to plead guilty to the charge of transporting the boy in interstate commerce and be tried by the Department of Justice than to stand trial for the state offense in Wash-

ington; that the Chief, Mr. Hoover wanted some money so he could build up his Bureau of Investigation; that he believed these representations, and relying thereon entered a plea of guilty, and that he would not have otherwise so pleaded. There were also some loose statements in the evidence that E. J. Connelley, also an agent of the Federal Bureau of Investigation, had threatened to beat him up. The appellant insisted that these threats of bodily harm had nothing to do with his pleas of guilty because he told them "to come right ahead and I will guarantee to give at least a few black eyes before I leave myself." In his testimony appellant sought to make it clear that any bullying tactics did not frighten him in the least but it was the fear of newspaper publicity and the results thereof as imposed upon him by Miller which induced his pleas of guilty.

The record shows that at the time the appellant was arraigned, Judge Cushman was extremely careful to be sure that the rights of the defendant should be safeguarded. A few excerpts from the record are illuminating:

"The Court: The court advises you that —and the other defendant is so advised at the same time—that if you have no money to hire a lawyer or if you request the Court to appoint you an attorney or lawyer or counsel to advise you, one will be appointed before anything further is done in any of these cases. Do you understand my statement? Each of you?

"Mr. Waley: Yes, sir."

* * * * * * *

"The Court: I understand you to say, Harmon Metz Waley, that you understood my statement to you, that if you desired it the Court would appoint an attorney to advise and assist you in any defense you see fit to make?

"Mr. Waley: Yes, sir.

"The Court: Do you wish the Court to appoint you one?

"Mr. Waley: I don't believe an attorney will be necessary.

"The Court: You are charged with a serious offense and the Court feels that you should be represented by an attorney. Notwithstanding such advice from the Court do you still insist that you do not desire an attorney and waive the appointment of someone to consult with you and advise you before you enter a plea?

"Mr. Waley: Yes.

\* \* \* \* \* \* \*

"The Court: The record will show waiver in each of the causes mentioned. Margaret E. Waley, you understood my statement regarding your being entitled to be represented by a lawyer?

"Mrs. Waley: Yes, sir.

"The Court: In these two cases, number 14852 and 14854, do you request the Court to assist you by the appointment of an attorney?

"Mrs. Waley: No, sir."

The indictment was read after which the following occurred:

"The Court: Do either of you, before this Court asks you what your plea in this case is, do you either of you, wish time to consider whether you wish to be represented by an attorney or not?

"Mr. Waley: No, sir."

Later the appellant indicated his desire to ask a question of the court and then this occurred:

"The Court: Harmon Metz Waley, what is the question you want to ask?

"Mr. Waley: I would like to ask—in this indictment whether it says that all three conspired. I would like to know if that means before the kidnapping or not?

"The Court: The court has advised you that it would appoint you an attorney if you request it. The Court will not advise you."

Thereupon, Mrs. Waley suggested Mr. S. J. O'Brien of Tacoma, Washington, as attorney. Then the following took place:

"The Court: I want to know from the defendants who they desire to represent them?

"Mr. Waley: He is all right (indicating O'Brien).

"The Court: Mr. O'Brien who just addressed the Court?

"Mr. Waley: Yes.

"By the Court: If you desire the appointment of one more attorney or you request an additional attorney to be associated with Mr. O'Brien he will be appointed by the court.

"Mrs. Waley: No. I think Mr. O'Brien will be all right.

"The Court: Do you feel the same way?

"Mr. Waley: Yes, sir."

Thereupon, the receiving of the pleas was postponed until another date at which time the defendant returned into court with his attorney and again signified his desire to plead guilty which was then accepted in open court and entered of record.

The appellant, while on the witness stand in the hearing in this habeas corpus proceeding, admitted that he never told his attorney or anyone connected with the trial court that threats had been made against him in order to influence him to plead guilty to the charge of transporting the victim from the State of Washington to the State of Idaho.

The only testimony which supports the claim of the appellant is his own and that of his codefendant, William Dainard. The evidence is contradicted by a number of witnesses who apparently are worthy of belief.

Albert Miller, who was the agent designated by the appellant as having made the threats which induced his pleas of guilty, was present in the courtroom at the hearing and was pointed out by appellant as the individual who had made the intimidating statements and caused him to plead guilty. Miller contradicted in detail all the charges made by the appellant, particularly emphasizing that no threats of any kind had been made by him or by anyone in his presence.

E. J. Connelley, Assistant Director of the Federal Bureau of Investigation, by deposition testified that appellant voluntarily made statements as to his having taken the victim into Idaho as set forth in the various statements and confessions signed by him. He also testified that these statements were voluntarily made and not induced by any threats.

A small road map was introduced in evidence which had been initialed by the appellant at the time he made the statements and upon which he marked the route over which the conspirators had gone while they had the victim in custody, which clearly shows they entered into the State of Idaho. Mr. Connelley further referred to a conversation which occurred between George Weyerhauser and appellant while he was at the Thurston County jail in Olympia. They were conversing generally as to their experiences while the Weyerhauser boy was being held by the kidnappers; particular reference was made to a time when the boy remained in the care of Waley while

Mrs. Waley and Dainard went to town. In the course of this conversation, Waley said to the Weyerhauser boy, "When we were over in Idaho, he [referring to Dainard] came back and asked, 'Are you all right?' Don't you remember he asked you if you were all right". This statement was addressed to the Weyerhauser boy who agreed that he remembered the incident.

Other witnesses from the staff of the Federal Bureau of Investigation contradicted appellant's testimony. Special Agent J. T. McLaughlin deposed that he was present when appellant Waley made the statement that the Weyerhauser boy had been taken into the State of Idaho; that there were no threats, nor promises, nor acts of coercion made to induce his statements; that he was also present when appellant delineated on the travel bureau map the route taken and showed that the kidnappers had taken the boy into the State of Idaho.

Special Agent L. W. Arms testified that he had talked with the appellant after he had been sentenced and that he, Waley, told him in this interview that they (those concerned in the kidnapping) had taken the victim into the State of Idaho.

Appellant at the hearing requested that the testimony of his wife given at her trial for her complicity in the kidnapping be made a part of the record in this hearing which was done.

In her trial she gave the following significant testimony:

"Q. And do you know whether or not you were ever in the State of Idaho? A. Well, later on that day I was told that we had passed through the State of Idaho.

"Q. Later on that day? A. Yes.

"Q. Who told you that? A. Harmon.

"Q. Harmon told you? A. Yes."

The Harmon referred to above is the appellant.

She also testified by deposition in the matter of this proceeding as follows:

"15. Will you state whether or not you, Harmon Waley, William Dainard, and George Weyerhauser drove together in an automobile from the State of Washington to and into the State of Idaho during the month of May or June, 1935? I don't know whether we did or not. I was told we did.

"16. When we were in Spokane on a Monday (I do not remember the date) I was given to understand that we had crossed the state line into Idaho. Then when we were arrested Harmon took a map and drew a route that he said we had followed, and he signed it and told me to sign it because that was where we had gone. I told him I could not swear to it, and he told me to go ahead and sign it, that he knew where we had gone."

Appellant also introduced a letter he had received from Mrs. Waley while he was in prison from which we quote the following excerpts: "Harmon, the statement I made and signed in Salt Lake City (I mean the second one) was the truth as far as I knew it and all I knew of it, * * * Remember I told you and Bill when I first learned about the boy, that I'd never tell anything until they had you and had proof you were guilty, but after that I'd tell all I knew? Well, that is just what I did!"

In the testimony of appellant himself at the hearing in this proceeding, he was asked:

"Q. Did you tell your wife that you had passed through the State of Idaho? A. I don't recall that I did. It is not impossible to pass through the State of Idaho that way.

"Q. Did you tell your wife that you had passed through the State of Idaho? A. I do not recall telling her any such thing.

"Q. Would you say that the statement she made testifying in her own behalf was incorrect? A. I don't know. I have nothing to say about that, because I don't know whether I did tell her that or not."

In his petition, throughout his testimony, and in his brief the appellant keeps reiterating that the federal courts had no jurisdiction of the offense charged. In this he assumes that his statements that the kidnapped victim was not taken into the State of Idaho from the State of Washington must be accepted as true.

Waley contends that the Federal Bureau of Investigation agent coerced him into signing untrue statements and confessions of the journey into Idaho which caused him to enter his plea of guilty. On this contention the evidence is clear that the Federal Bureau of Investigation agents held him in custody in their offices in Salt Lake City for four days, during which time under their various interrogations the written confessions, signed by Waley, were obtained, and that he was not brought be-

 

fore a committing magistrate until some time later in Tacoma, Washington. In this the conduct of the agents of the Federal Bureau of Investigation was that condemned in the case of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819, and Gros v. United States, 9 Cir., 136 F.2d 878.

■ However, the confessions never were produced in the proceedings in which Waley pleaded guilty. He had counsel to advise him. Waley claims he never advised his counsel of the coercion which he now claims led him to plead guilty, though that plea was made with his counsel present. In this situation the district court found "That petitioner at the time of his appearance before the trial court on June 21, 1935 in the presence of his counsel, freely and voluntarily entered pleas of guilty to the charges of the respective counts of the aforesaid indictment theretofore read to him." We believe that the finding was justified.

In the court below, appellant admitted the crime of kidnapping and a prior conviction. The District Court was entitled to disbelieve appellant about his claim as to the method by which the confessions were procured; and further that, in fact, the normal relationship of attorney and client existed in which Waley's attorney advised him of his rights, namely, that a confession secured in the manner claimed by appellant could in no way be used against him, as indicated in White v. State of Texas, 310 U.S. 530, 532, 60 S.Ct. 1032, 84 L.Ed. 1342.

Even assuming that the appellant chose not to seek the advice of his attorney, the District Court properly could infer that he voluntarily chose to be tried in the jurisdiction invoked by the government.

The District Court affirmatively found: "That no threats of any kind or character whatsoever were made against or to petitioner by the agents of the Federal Bureau of Investigation or the United States Attorney or his Assistant."

And again: "That petitioner's pleas of guilty entered by him before the trial Court, as aforesaid, were not entered as the result of any threats made against him or promises made to him by any persons whatsoever."

■ The doctrine of McNabb v. United States, supra, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, is confined to the situation where the confession is introduced in evidence. It may not be pressed to the extent that a confession procured as here, but not introduced against him, can give the defendant an immunity from the result of his pleas of guilty.

The indictment stated facts giving the trial court jurisdiction. Appellant pleaded guilty in open court in the presence of his attorney, thus conceding the facts alleged. The only question on this habeas corpus proceeding is whether the plea of guilty was freely and voluntarily entered. The court found that it was. There is ample evidence to sustain that finding.

Affirmed.