**DAINARD v. JOHNSTON, Warden.**

**No. 10899.**

Circuit Court of Appeals, Ninth Circuit.

June 7, 1945.

---

William Dainard, in pro. per., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan, and Joseph Karesh, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

William Dainard, while being held a prisoner in the federal penitentiary at Alcatraz, California, by Warden Johnston, petitioned the district court for the issuance of the writ of habeas corpus. The writ was issued. After a hearing thereon by the court, it was discharged, and Dainard was remanded to the custody of the warden. Dainard appeals.

It is appellant's contention that he was insane when arraigned, when he entered his plea of guilty to the charge pending against him, and also when he was sentenced. He further claims that he did not understand the court's statements concerning his right of counsel, that he did not knowingly waive the right, and that his plea was the result of coercion, intimidation, and threats by government officers and was not voluntary. The court, after a hearing on the writ, made full findings negativing all of the claims and contentions.

Appellant was arrested in San Francisco at about the hour of 9:00 A.M. on May 7th, 1936, as a suspect in the Weyerhauser kidnapping, by two officers of the Federal Bureau of Investigation. See Waley v. Johnston, 9 Cir., 1943, 139 F.2d 117, certiorari denied, 321 U.S. 779, 64 S.Ct. 617. Upon search of his person, he was found armed with a loaded gun, and another loaded gun and large sums of money were found in his car. Some of the money consisted of marked bills which had been the subject of ransom for the release of the kidnapped Weyerhauser boy. Dainard was taken to the "field office" of the Federal Bureau of Investigation in the San Francisco Post Office Building, and there questioned. In the afternoon of the same day he was flown to Tacoma, Washington, and two days later was taken before the district court where he was arraigned; immediately thereafter he pleaded guilty and was sentenced to the penitentiary for the period of sixty years.

No question is raised upon the sufficiency of the proceedings in the Washington district court to cover all of petitioner's constitutional rights, it being the contention of petitioner that the treatment he had been accorded by the officers since his arrest made him insensible to what he was doing, and that he was, at the time and for some time thereafter, insane.[1]

---

[1] The following colloquy occurred in the United States District Court at Tacoma, Washington, May 9th, 1936:

"By the Court. The defendant will come forward. Is your true name William Dainard?

"Defendant. Yes.

"By the Court. Have you an attorney?

"Defendant. No.

"By the Court. Do you wish to secure your own attorney?

"Defendant. No, I don't care for any.

"By the Court. You have money to hire a lawyer?

"Defendant. No.

"By the Court. The Court advises you that if you have no money to hire a lawyer and ask the Court to appoint you a lawyer to advise you and consult with you and represent you when it becomes necessary, that the Court will do so, do you understand that?

"Defendant. Yes.

"By the Court. In view of these facts, and that advice, do you ask the Court to appoint you a lawyer?

"Defendant. No.

"By the Court. Do you know of what you are accused?

"Defendant. Yes.

"By the Court. Let the record show the defendant waives appointment by the Court of a lawyer and announces that he does not wish to secure a lawyer himself. Do you wish delay in this matter until you can consult with your friends and have your friends secure you a lawyer?

"Defendant. No.

"By the Court. Have you read this indictment in cause No. 14,852?

"Defendant. No.

"By the Court. Has the defendant been furnished a copy of the indictment?

"Mr. Hughes. No. I will read the indictment at this time.

"(The indictment in cause No. 14,852 was then read in full by Mr. Hughes, As-

The court upon the hearing of the habeas corpus proceeding afforded the petitioner every opportunity to prove his allegations. He was represented by competent and industrious court-appointed counsel, who gave his time and unquestioned ability through several lengthy court sessions. The government admirably cooperated with court and counsel to the end that the exact truth should be revealed. And without a doubt the court had submitted to it substantial evidence in support of every fact it found. It would seem useless here to relate the testimony, which is seriously conflicting only as between petitioner and other witnesses.

It is frankly admitted by the arresting officers that it was the practice at the time to take an arrestee to the jurisdiction in which the charged crime had been committed without taking him before the nearest magistrate. The happenings here under discussion occurred before the decision in McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

 Of course, it was the plain duty of the officers to comply with the statute [2] providing for such presentation before the nearest magistrate, which they did not do, but it does not follow that subsequent proceedings were necessarily tainted with illegality.

 It appears that Dainard signed a paper consenting that he be taken to Tacoma and upon its face purporting to waive the necessity of his being taken before a magistrate. We do not regard this circumstance as of great importance in the disposition of this proceeding. The officers' duty cannot be so avoided. Dainard claims that he signed the paper under coercion and confusion, but it would be as reasonable to believe, as the trial court evidently did believe, that since he had been intercepted while heavily armed and while in possession of large sums of money—some of which was marked ransom money and some of which came by exchange of money from

the same source—he deemed it useless to make any move in the nature of a defense.

It is undisputed that Dainard appeared before the late Judge Cushman and received careful and painstaking instruction as to his constitutional rights. Evidently, this experienced judge observed nothing about the appearance of Dainard that indicated an abnormal condition, either from temporary exhaustion or derangement. If Dainard, when in possession of his faculties and after receiving full instructions as to his rights and when not acting under fear or coercion, entered his plea of guilty (and there is substantial evidence in support of the trial court's findings and conclusions that such was the case), the fact that he had not been taken before a magistrate in accordance with the law does not invalidate his plea and the consequential sentence. Waley v. Johnston, supra.

The cases of McNabb v. United States, supra, and Gros v. United States, 9 Cir., 1943, 136 F.2d 878, presented different situations entirely. In those cases the convictions rested upon jury verdicts after introduction of written confessions secured through illegal treatment of the accused, and the distinction is obvious.

Affirmed.

---

sistant United States Attorney.) That is the charge of this indictment.

"By the Court. Having heard the indictment read, the Court again advises you that if you wish to take time to further consider this matter of entering your plea, or if you wish to secure a lawyer or communicate with your friends so that they may secure a lawyer or ask the Court to appoint a lawyer to advise and assist you, you will be afforded that opportunity and

if you request, the Court will appoint one to represent you?

"Defendant. No, I don't think I care to.

"By the Court. You do not care for any of these things?

"Defendant. No.

"By the Court. Are you ready now to enter your plea to this indictment?

"Defendant. Yes."

