## THEODORE RUSSELL LOGAN v. STATE OF MARYLAND

[No. 24, September Term, 1980.]

\* \* \*

## EUGENE JEROME BANKS v. STATE OF MARYLAND

[No. 36, September Term, 1980.]

*Decided February 11, 1981.*

462

· The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Michael A. Anselmi, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE,

COLE and DAVIDSON, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 488 *infra,* in which COLE and DAVIDSON, JJ., concur.

These two criminal causes, consolidated for consideration in this Court, present us with legal issues common to both, as well as an additional question in each related solely to the case from which it arises. The mutual issues are: (i) whether, as a technical legal question, a detained criminal suspect can waive the requirement of Maryland District Rule 723 a that the defendant "be taken before a judicial officer without unnecessary delay;" (ii) assuming that an accused cannot, or that one of these defendants did not, validly waive his right to a prompt appearance, whether that defendant's statement made prior to his appearance before a commissioner was obtained in violation of M.D.R. 723 a; and (iii) assuming that waiver of a timely appearance can effectively be made, whether, in fact, a valid and acceptable waiver was obtained by police in each of these cases. The issues unique to the individual causes are: (i) whether, in determining the sentence imposed on one of these defendants, the trial court erred in considering and partly relying on admittedly illegally obtained confessions to six other crimes; and (ii) whether the defendant was properly informed of and afforded the opportunity to exercise his right of allocution pursuant to Maryland Rule 772 d. Because of the multiplicity and diversity of issues presented by the two appeals, we shall initially set forth the general factual background of each case, and then supply particular additional information that may be necessary for a proper understanding of the various contentions made here and our disposition of them.

I

In the first case we discuss, petitioner Theodore Russell Logan voluntarily surrendered himself to police after learning that a warrant for his arrest had been obtained in connection with the theft of personal property from an

apartment in Adelphi. While in police custody, but prior to his appearance before a judicial officer, Logan was advised by the police that he had a right to an immediate initial appearance before a commissioner, where he would be specifically informed of a number of rights that, as an accused, he was entitled to enjoy. After stating that he understood the information provided him, Logan ostensibly waived his right "to an immediate initial appearance." This petitioner subsequently made incriminating statements which were later admitted at trial over his objection. He was found guilty by a jury in the Circuit Court for Prince George's County (Fisher, J.) on April 20, 1979, of daytime housebreaking and petit larceny, and for these crimes sentenced to serve a total prison term of nine and one-half years. The Court of Special Appeals affirmed the convictions, *Logan v. State,* 45 Md. App. 14, 410 A.2d 1110 (1980), and we granted certiorari.

Eugene Jerome Banks, the petitioner in the other appeal before us, was arrested following the shooting and killing of Robert McNeil, a taxi driver, in Hyattsville, Maryland on January 20, 1979. After a check for traces of gunpowder on his hands and treatment in a hospital for a dog bite suffered during arrest, Banks was read a litany of rights by the investigating police officer, including his right to a prompt initial appearance before a commissioner pursuant to M.D.R. 723 a. Following a written acknowledgement that he had received and understood these rights and waived the prompt appearance requirement, Banks made an inculpatory statement implicating himself in the robbery and killing of McNeil. Over the defendant's objection, this statement was subsequently received into evidence at his trial in the Circuit Court for Prince George's County. Upon being convicted by a jury of, and sentenced by Judge Ross to a total of fifty years for, second degree murder, false imprisonment, use of a handgun during the commission of a felony, armed robbery, and carrying a handgun, Banks noted an appeal. The Court of Special Appeals, in an unreported opinion, affirmed the convictions, but vacated the sentence because it concluded that Banks' right to

allocution provided for in Maryland Rule 772 d was not afforded him; we granted certiorari.

Because important issues relating to waiver of the right to a prompt initial appearance under M.D.R. 723 a are common to both the Logan and Banks causes, we ordered the cases consolidated for argument, and will answer each of the contentions presented by the two appeals in this one opinion.

## II

The central contention of both petitioners in urging this Court to reverse their convictions is that the requirement of M.D.R. 723 a that an accused who is in custody be promptly taken before a judicial officer cannot, as a matter of law, be waived by a detained suspect. In confronting this issue, it is important to note at the outset that we are at this time only considering a legal question and, thus, we need not, for the purposes of its resolution, concern ourselves with the factual aspects of the ostensible waiver occurring in each case. We accordingly approach this specific issue with the assumption that these defendants, being fully apprised and knowledgeable of their right to a prompt initial appearance, willingly and voluntarily intended to waive that right. In short, the question now before us is whether a voluntary, intelligent and knowledgeable waiver is permitted.

We commence our discussion of this matter by setting out in full the rule as it was formerly worded which governed the detention of the two petitioners here:

A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. A charging document shall be

filed promptly after arrest if not already filed. [Maryland District Rule 723 a].[1]

Although the rule itself neither expressly permits nor prohibits a waiver of its provisions, this Court, a mere two years ago in *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), addressed whether the requirements of M.D.R. 723 a could be waived. The accused in *Johnson* had been detained for over 24 hours following his arrest without presentment before a judicial officer, during which time he implicated himself to a degree in the robbery and shooting for which he had been arrested. The police interrogation which immediately followed his appearance before the commissioner further yielded his outright confession to the commission of those crimes. In addressing the issue whether a violation of the dictates of M.D.R. 723 a requires the automatic exclusion from trial of evidence obtained during a period of unnecessary delay, Judge Levine, speaking for this Court, stated:

> In our opinion the protection of the right of an accused to prompt production before a judicial officer following arrest will be most effectively accomplished by a per se exclusionary rule. Not only is such a rule calculated to deter unlawful detentions and to preserve the integrity of the criminal justice system, but it is likely to assure more certain and even-handed application of the prompt presentment requirement and will provide to trial courts, the bar and law enforcement officials greater guidance as to the permissible limits of custodial interrogation prior to an initial appearance.

---

1. The rule was revised effective July 1, 1979 to read:

A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than 24 hours after arrest. A charging document shall be filed promptly after arrest if not already filed.

* * *

We therefore hold that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief. [*Id.* at 328-29, 384 A.2d at 717.]

In *Johnson,* after rejecting the State's contention that by waiving his *Miranda*[2] rights, a detained suspect automatically abandons the M.D.R. 723 a right, *id.* at 331-32, 384 A.2d at 719, this Court concluded with the following unequivocal language, which is quite pertinent to our inquiry here:

In sum, then, unless appellant waived his right to prompt presentment before a judicial officer, [the] statements implicating him in the crimes . . . should have been excluded from evidence, having been obtained in clear violation of M.D.R. 723 a.

* * *

Of course, a defendant may specifically waive his right to prompt presentment, provided such waiver is knowingly and intelligently made . . . . Since the record in the present case reveals no indication that appellant ever effectively consented to a deferment of his initial appearance, we hold that his rights under M.D.R. 723 a were not validly waived. [*Id.* at 330, 332, 384 A.2d at 718, 719 (citations omitted).]

In an effort to counter the significance of the quoted language, the Public Defender argues that this is mere "dictum" which should not be transformed into a holding

---

2. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

because it subverts the basic principles which had earlier been announced in the *Johnson* opinion, and entreats us to disaffirm or overrule its import. We decline the invitation. Before explaining our reasons for adhering to our statement in *Johnson,* we initially observe that the petitioners are incorrect in characterizing this language as merely "dictum." To the contrary, our conclusion there was central to our inquiry — indeed, a necessary requisite to the ultimate result reached — and accordingly was a holding of this Court. Normally, with such a recent precedent to guide us, we would do little more in the present cases than say the issue was decided in and controlled by *Johnson.* However, since our analysis of the waiver issue in that case was not extensive, and because we are again squarely presented with the same question here, it may be advisable that we more thoroughly articulate the reasons for our determination that the right to a prompt initial appearance embodied in M.D.R. 723 a can be waived.

Part of the focus necessary for the explanation of our holding in *Johnson* should be on what, precisely, the rule is designed to achieve at the initial appearance before a judicial officer and, thus, what, precisely, a detained suspect *temporarily* forgoes in this respect by waiving his right to be promptly taken before the commissioner. We previously catalogued in *Johnson* the procedural components of the initial appearance: first, the judicial officer is to inform the accused of all charges and supply him with copies of the charging documents if he has not already received them; second, the defendant is to be informed of his right to counsel, and if indigent, his right to have the State supply him "with a lawyer ... free of charge;" third, the commissioner is to make a determination of the suspect's eligibility for pre-trial release under M.D.R. 721; fourth, if arrested without a warrant, further detention may not be made without a determination by the judicial officer that probable cause for arrest exists; fifth, if the District Court lacks subject matter jurisdiction to try the defendant on the charge, the judicial officer is to inform the accused of his right to a preliminary hearing; and finally, if the District

Court has jurisdiction to try the case, the judicial officer is to either set the time and date of trial, or notify the defendant that he will be so advised by the court clerk. See *Johnson v. State, supra* at 321-22, 384 A.2d at 713-14. As can be readily discerned from a reading of M.D.R. 723 b itself, and as we observed in *Johnson,* these requirements were designed to

> bolster in substantial fashion several fundamental constitutional guarantees, including the right of a defendant to be informed of the accusation against him, Maryland Declaration of Rights, Art. 21; the right to be free from unauthorized and unreasonable seizures of his person, U.S. Const., amends. IV and XIV; *Gerstein v. Pugh,* 420 U.S. at 114; the right to be allowed counsel, Declaration of Rights, Art. 21, and to have counsel appointed for him if indigent, U.S. Const., amends. VI and XIV; *Gideon v. Wainwright,* 372 U.S. 335, 344-45, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), as well as the due process right to be free from coercive investigatory methods. *Brown v. Mississippi,* 297 U.S. 278, 286, 56 S. Ct. 461, 80 L. Ed. 682 (1936). [*Id.* at 322, 384 A.2d at 714.]

Having these objectives of M.D.R. 723 a in mind, it is important to remember that we are not called upon to address whether the defendant can waive the requirement that he be informed of these rights by a judicial officer; rather, we focus on whether he can waive his right to be taken before a commissioner promptly without unnecessary delay. First of all, we deem it clear that each of the rights, constitutional or otherwise, contemplated by the rule to be made known to the accused at his initial appearance can itself be waived. *See, e.g., Martel v. State,* 221 Md. 294, 300-02, 157 A.2d 437, 441 (1960), *cert. denied,* 363 U.S. 849 (1960) (waiver of indictment); *Garland v. Washington,* 232 U.S. 642, 34 S. Ct. 456, 58 L. Ed. 772 (1914); *Jordan v. State,* 221 Md. 134, 138, 156 A.2d 453, 455 (1959), *cert. denied,* 361 U.S. 972 (1960) (failure to conduct arraignment does not

violate due process of law; waiver of arraignment procedure possible); M.D.R. 727 (b) (c) (preliminary hearing waived both by express waiver or failure to make a timely request); *Adams v. United States,* 317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 268, 143 A.L.R. 435 (1942), *rehearing denied,* 317 U.S. 713 (1943), Md. Rule of Procedure 723 (c) (waiver of right to counsel); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Lyles v. State,* 203 Md. 605, 610, 102 A.2d 291, 293 (1954) (relinquishment of right to be free from searches without warrant or probable cause by valid consent). This being true, we can divine no persuasive reason why an accused acting voluntarily, intelligently and with a basic knowledge of the rights here involved, cannot waive a prefatory requirement designed to reasonably ensure that he be promptly informed of such substantive rights. It would be a strange holding indeed were we to conclude that though the defendant can knowingly waive a constitutional right, he cannot knowingly waive a court rule (absent specific language rendering such a purported waiver ineffective) adopted to bolster and implement that constitutional right. See *State v. McKay,* 280 Md. 558, 570, 375 A.2d 228, 235 (1977) (if fundamental constitutional rights can be waived by accused, waiver of unanimous jury verdict existing primarily for his benefit can likewise be waived). Relying principally on the case of *United States v. Haupt,* 136 F.2d 661 (7th Cir. 1943), the petitioners contend that the requirement of M.D.R. 723 a imposes an independent obligation on the arresting officers, and that such a duty imposed by law upon another is not the defendant's to waive.[3] We disagree. It is now well-settled by almost universal authority that when waiver is permitted, the potential beneficiary of the right surrenders both the

---

3. We observe that while there is language in *Haupt* that supports the argument that Logan and Banks make here (even if the petitioners correctly interpret its teachings), the case received sparce acceptance, if any at all, following its announcement nearly forty years ago. *See* United States v. Grote, 140 F.2d 413, 415 (2d Cir. 1944). *See also* Note, *The McNabb Rule Transformed,* 47 Colum. L. Rev. 1214, 1219 (1947) (*Haupt* no longer authoritative on waiver question after United States v. Mitchell, 322 U.S. 65, 64 S. Ct. 896, 88 L. Ed. 1140 (1944), *rehearing denied,* 322 U.S. 770 (1944)).

privilege he possesses by virtue of it, as well as the ability to claim the advantage flowing from the failure to perform any corresponding obligation imposed on the State by that right. *See, e.g., Jones v. State,* 279 Md. 1, 7, 367 A.2d 1, 6 (1976), *cert. denied,* 431 U.S. 915 (1977) (duty to bring defendant to trial imposed on State by defendant's right to speedy trial; right waivable); *State v. Renshaw,* 276 Md. 259, 270, 347 A.2d 219, 227 (1975) (right to counsel imposes duty on State to provide effective representation; right waivable); *State v. McKay, supra* (right to unanimous criminal jury verdict does not impose imperative requirement on the State to provide the same; right subject to waiver). The existence of that obligation seldom destroys the ability of the defendant to willingly forego what exists primarily for his benefit. In short, we reject "a proposition submerged in the murky waters that surround meaningful waivers. We are unable to accept the thesis that no one can ever intelligently waive an important constitutional right voluntarily...." *Pettyjohn v. United States,* 136 App. D.C. 69, 419 F.2d 651, 654 (D.C. Cir. 1969), *cert. denied,* 397 U.S. 1058 (1970). In our view, the same is ordinarily true in the area of important non-constitutional rights.

In this connection, we note that the list of rights generally recognized to be susceptible of waiver is long indeed. *See, e.g., Allen v. State,* 183 Md. 603, 612, 39 A.2d 820, 824 (1944) (privilege not to be compelled to give evidence against oneself in a criminal case may "like all other privileges" be waived); *State v. Zimmerman,* 261 Md. 11, 12, 273 A.2d 156, 157 (1971) (right to jury trial); *Jenkins v. State,* 232 Md. 529, 532-33, 194 A.2d 618, 621 (1963) (admission of illegally seized evidence waived by failure to object thereto); *State v. Collins,* 265 Md. 70, 79-80, 288 A.2d 163, 168 (1972) (right to confront the witnesses against the defendant); *Elliott v. Warden,* 243 Md. 627, 631, 222 A.2d 55, 57 (1966) (right to counsel); *Barker v. Wingo,* 407 U.S. 514, 524-29, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Jones v. State,* 279 Md. 1, 8, 367 A.2d 1, 6 (1976), *cert. denied,* 431 U.S. 915 (1977) (right to speedy trial); *Ogle v. Warden,* 236 Md. 425, 426-27, 204 A.2d 179, 180 (1964) (claim of violation

of procedural right, constitutional or otherwise, waived by entry of guilty plea); *State v. McKay, supra* (right to unanimous criminal jury verdict). Particularly instructive to our inquiry here is the fact that the right to counsel, and the right to be free from compelled self-incrimination, are universally held to be subject to waiver by a defendant. *See, e.g., Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Adams v. United States,* 317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 2d 268 (1942), *rehearing denied,* 317 U.S. 713 (1943) (right to counsel); *Gardner v. Broderick,* 392 U.S. 273, 88 S. Ct. 1913, 20 L. Ed. 2d 1082 (1968) (privilege against self-incrimination). As we noted in *Johnson* (282 Md. at 331, 384 A.2d at 719), there is some amount of overlap between the *Miranda* requirements imposed to dispel the coercive atmosphere that may render the exercise of these rights difficult or impossible, and the requirement of M.D.R. 723 a that the defendant be promptly taken by police before a judicial officer. In this regard, it is instructive to note that with respect to the federal equivalent of our initial appearance rule, Fed. R. Crim. P. 5 (a), and the Supreme Court decisions of *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), *rehearing denied,* 319 U.S. 784 (1943), and *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957), it was later observed by the federal circuit court of appeals that:

> [T]he evolution in our understanding of *Mallory* has "paralleled the visible movement by the Supreme Court towards the application of Fifth and Sixth Amendment considerations to the pre-arraignment period. That, movement culminated, of course, in *Miranda,* in the shadow of which Rule 5(a) now resides . . . ." . . . *Mallory* has been ultimately concerned with effectuation of Fifth and Sixth Amendment protections against the dangers of involuntary self-incrimination in station houses and with the other evils inherent in police interrogation of an accused in secret . . . . *Mallory* itself has stood guard against not only the "third degree," but also "the pressures in a Police Station

upon prisoners under secret interrogation without counsel, relative or friend." These, of course, are precisely the concerns of *Miranda*. [*Frazier v. United States,* 136 App. D.C. 180, 419 F.2d 1161, 1164-65 (D.C. Cir. 1969), *overruled in part,* 476 F.2d 891 (D.C. Cir. 1973) (citations omitted).]

Although we think it evident from our earlier discussion that the concern of M.D.R. 723 encompasses more than the particular evils to which *Miranda* was directed, see *Johnson v. State, supra* at 331, 384 A.2d at 719, to the extent that there is overlap, the authorities holding that *Miranda* rights can be waived are supportive of our conclusion that the requirement of M.D.R. 723 a is likewise waivable. Moreover, we observe that there is a substantial body of judicial authority from other jurisdictions which, in interpreting their similar requirement of an initial appearance before a judicial officer without unnecessary delay, is in accord with our determination in *Johnson* that the requirement in M.D.R. 723 a, assuming the necessary requisites have been satisfied, can be waived. See *United States v. Indian Boy X,* 565 F.2d 585, 591 (9th Cir. 1977), *cert. denied,* 439 U.S. 841 (1978); *United States v. Poole,* 161 App. D.C. 289, 495 F.2d 115, 120 (D.C. Cir. 1974), *cert. denied,* 422 U.S. 1048 (1975); *Frazier v. United States, supra* at 1166; *United States v. Lopez,* 450 F.2d 169, 170 (9th Cir. 1971), *cert. denied,* 405 U.S. 931 (1972); *Pettyjohn v. United States, supra,* 419 F.2d at 656; *United States v. Grote, supra* at 415; *People v. Hosier,* 186 Colo. 116, 525 P.2d 1161, 1164 (1974) (en banc); *People v. Weaver,* 179 Colo. 331, 500 P.2d 980, 982 (1972) (en banc); *Hawkins v. United States,* 304 A.2d 279, 281 (D.C. 1973); *Richmond v. State,* 554 P.2d 1217, 1229 (Wyoming 1976), *rehearing denied,* 558 P.2d 509 (1977). *Cf. United States v. Bayer,* 331 U.S. 532, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947), *rehearing denied,* 332 U.S. 785 (1947); *Gutierrez v. State,* 388 N.E.2d 520, 525-26 (Ind. 1979); *Green v. State,* 257 Ind. 244, 274 N.E.2d 267, 271 (1971); *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279, 290-91 (1976), *overruled on other grounds,* 228 Kan. 294, 615 P.2d 153 (1980). Accordingly, we reaffirm our

holding in *Johnson* that the prompt appearance requirement of M.D.R. 723 a is susceptible of waiver by a suspect.

## III

Having concluded that waiver is legally permissible, we now focus on the specific ostensible relinquishment of the prompt appearance requirement made by petitioners Logan and Banks in these cases. The prevalent standard governing waiver of fundamental constitutional rights was decades ago enunciated by the United States Supreme Court in *Johnson v. Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case...." *Id.* at 464. In further commenting on this same subject, the Supreme Court has more recently stated that there exists a presumption "that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). While we recognize the dictate of the Maryland District Rule that a defendant be taken before a commissioner without unnecessary delay is not required by the federal constitution, see *Kennedy v. State,* 289 Md. 54, 421 A.2d 1376 (1980); *Johnson v. State,* 282 Md. 314, 323, 384 A.2d 709, 714 (1978), we have seen that the initial appearance requirement protects and implements several fundamental constitutional rights, both federal and state. *Id.* at 322, 384 A.2d at 714. Given the intimate interplay between these constitutional rights and the initial appearance proceeding itself, we believe that the knowing, intelligent and voluntary waiver standard set out in *Johnson v. Zerbst, supra,* is the one to be met for an effective

waiver of the requirement of a prompt initial appearance. This is what our opinion in *Johnson v. State,* 282 Md. at 332, 384 A.2d at 719, contemplates, and we accordingly apply that standard in examining the individual factual circumstances involved in each of the present two appeals.

The record discloses that petitioner Logan was provided a copy of, and was·read aloud, the following written form:

> Maryland District Court Rule 723(a) gives you a right to an initial appearance before a judicial officer. That Rule provides that if you are detained pursuant to an arrest you shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24-hours after arrest or (2) the first session of court after your arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. At that appearance, the judicial officer is required to provide you with a copy of the charging document and inform you of each offense with which you are charged; he is required to advise you of your rights to counsel; he is to make a pre-trial release determination; he is to make a determination of whether or not probable cause exists for your having been detained; he is to advise you of a preliminary hearing if one is to be set; he is to set a date and time for trial or notify you that you will be so advised by the Clerk, or, in an appropriate case set a time and date for a preliminary hearing; and shall certify and transfer the papers to the appropriate court.
>
> Do you understand what I have told you?_____*YES*_____*T.L.*_____
>
> Do you waive your right to an immediate initial appearance and agree to delay the appearance until the completion of this interview? In the event that you do so agree you may at any time request that the interview be terminated and you will then be

taken before a judicial officer without unnecessary delay.     *YES*        *T.L.*

You are further advised that (1) you have a right to remain silent (2) anything you say can and will be used against you in a court of law (3) you have a right to talk to a lawyer and to have him with you during questioning (4) if you cannot afford a lawyer, one will be appointed for you before a statement is taken if you wish (5) if you decide to give a statement you still have the right to stop at any time so you may talk to a lawyer. Do you understand your rights and what I have just explained to you? ___*YES*     *T.L.*___

Are you willing to make a statement without a lawyer at this time? ___*YES*___

Do you understand and know what you are doing? ___*YES*___

Have any promises, threats, or inducements been made to pressure or coerce you into making this statement? ___*NO*___

Logan initialled each answer as indicated, and signed the form at the bottom within fifteen minutes of his surrender to the police. Immediately following this waiver, interrogation of Logan began. The police officer told him that he was suspected of numerous breaking and enterings in which master keys were used to obtain entrance, and after twenty to twenty-five minutes of questioning, petitioner stated that "[i]f push comes to shove, I will confess to this one [breaking and entering]." Twenty minutes of additional questioning proved to be fruitful for the police when Logan then confessed to having committed that crime. When asked to comment on Logan's physical and mental demeanor, the interrogating officer, at the suppression hearing, stated that Logan appeared to be sober, rational and quite calm. With its determination that a waiver of a prompt initial

appearance is permitted and that in this case Logan knowingly, intelligently and voluntarily waived his M.D.R. 723 a right as well as his *Miranda* rights, the circuit court denied Logan's motion to suppress and, as a consequence, the confession was received into evidence at Logan's trial on the merits.

Petitioner Banks was arrested by Officer Tucker at 1:45 a.m. after having been bitten and ferreted out of his hiding place by a police canine. The arresting officer placed Banks in a police cruiser, advised him of his *Miranda* rights, and transported the suspect to a police station to check for gunpowder traces on his hands. He was then taken to a hospital for treatment of the minor dog bite suffered at the time of arrest, and from there to the police department's investigation bureau located in Forestville, Maryland. Upon his arrival there a few minutes after 3:00 a.m., Banks, in the custody of Detective Ferriter, was unmanacled, taken into an interrogation room and searched. He was again advised of his *Miranda* rights, and in response to an inquiry whether he understood what was just told him, Banks nodded his head affirmatively. Detective Ferriter then sought particular items of personal information from Banks, which the suspect furnished. It would appear that a short period of time transpired before Detective Jones, the chief investigating detective assigned to this case, joined Banks and read to him from a waiver form substantially identical to the one submitted to Logan.[4] The detective recorded the answers to the various questions as supplied by Banks, and the accused initialled each answer and affixed his signature to the bottom of the waiver form at 4:14 a.m. Banks then made inculpatory statements, which were reduced to writing, and later, over his objection, admitted as evidence in his trial.

---

4. The waiver of rights form we deal with here differed in only one minor respect from the form, previously set out in full in the text, provided and read to petitioner Logan. The Banks form did not inform the petitioner that the judicial officer, at the initial appearance, "is to advise you of a preliminary hearing if one is to be set;" he was nonetheless informed, as was Logan, that the commissioner "in an appropriate case [will] set a time and date for a preliminary hearing."

Having examined the records in the two cases before us, the essence of which we have just described, we cannot conclude that the trial court's factual determination, in either case, that the waiver was knowingly and voluntarily executed by the petitioner, is clearly erroneous. It is true that in the Banks case, there was a short delay, apparently lasting no more than about half an hour, between the time the petitioner was brought to the investigative bureau for interrogation and the waiver of his right to a prompt initial appearance. While a waiver by a suspect of his right to a prompt presentment before a judicial officer ordinarily would not operate retroactively to foreclose objection based on a preceding illegal detention, we perceive the short delay involved in the Banks case, particularly in combination with the complete absence of indications of coercion, to be insignificant. The records do disclose that Logan and Banks each were informed as to the nature of the information he would receive from the commissioner at his initial appearance, that each understood what he was told, that each was informed that he could terminate the interrogation at any time, that if he did so, he would be taken before a judicial officer without delay, and that the petitioners each, both orally and in writing, waived the M.D.R. 723 a requirement of a prompt initial appearance. However, faced with a dearth of evidence supporting a suggestion that the waiver in each of these cases was not knowingly, intelligently and voluntarily given and in fact with substantial evidence to the contrary (sufficient to authorize a determination that the State has met its burden of proof in this regard), petitioners principally argue, as we have seen, that this type of waiver is *ab initio* ineffective. Additionally, the two petitioners assert that even if it is not thus void, such a waiver can validly be made only to a judicial officer, and not to a police officer. In addressing the latter of these two arguments, we preliminarily note that the above facts are normally sufficient to support a valid waiver of the fundamental constitutional right to counsel and privilege against self-incrimination, *see Miranda v. Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Moreover,

we observe that the requirement "that conclusions concerning probable cause and the scope of a search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting our crime,' " *Arkansas v. Sanders,* 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) (quoting *Johnson v. United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948)), can be relinquished by the consent of the suspect, and such consent is normally tendered, long before his presence before a neutral magistrate, to the police officers conducting the search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Mathis v. Warden,* 243 Md. 682, 683, 221 A.2d 81, 82 (1966). In our view, if under these holdings the consent of a criminal suspect given to police officers can effect a waiver of the responsibilities that are constitutionally reposed in judicial officers with regard to fourth amendment rights, we fail to see on what logical basis the waiver of the requirement of M.D.R. 723 a cannot similarly be made to police officers. That a suspect was preliminarily informed of his rights by the police rather than a judicial officer is only a factor to be considered in connection with the voluntariness issue, and, standing alone, does not destroy the effectiveness of the prompt appearance waiver.[5] *See United States v. Poole, supra,* 495 F.2d at 120; *Frazier v. United States, supra,* 419 F.2d at 1166 n.24.

---

**5.** We note that a suspect in the circumstances present here, does not waive his right to be taken before the judicial officer nor does he waive his right to be informed by that officer pursuant to M.D.R. 723 b (as promptly, subsequent to interrogation, was each accused taken and informed here), but merely, for purposes of reasonable police interrogation, waives the speed with which the initial appearance must occur. Consequently, each petitioner here did address his waiver to the person upon whom the duty to take him before the judicial officer rests — the police. Moreover, we note that in the circumstances of these cases, the petitioners waived only their right to be taken before a judicial officer without unnecessary delay and in no event later than 24 hours, and thus intended no waiver of their right to an initial appearance after that time. We thereby do not reach whether, and if so, upon what conditions, a suspect can waive his M.D.R. 723 a right beyond the 24-hour period. In any event, the State does not contend that the waivers here encompassed any time beyond 24 hours.

## IV

The next contention we shall address, one which is raised solely by petitioner Logan, arises from the sentence imposed by Judge Fisher for the housebreaking and larceny convictions. The judge, in imposing sentence, stated that the court "would be blind if it were not to give some consideration to the other offenses for which confessions were obtained. . . . [T]he Court is going to give these statements some minimal consideration." It was conceded by the State at trial, as it was before this Court, that the confessions to the six other housebreakings, to which Judge Fisher referred, were unconstitutionally obtained as a result of the display to petitioner of an illegally seized set of master keys. Logan urges this Court to vacate the sentence imposed because, in his view, with the absence here of any of the well-recognized exceptions, the rule requiring exclusion of any unconstitutionally obtained evidence applies to sentencing proceedings, it being a part of the trial; thus, he posits that Judge Fisher committed reversible error by giving such illegally obtained confessions any consideration whatsoever. We do not agree.

The petitioner does not dispute, as clearly he cannot, that in this State a sentencing judge is vested with virtually boundless discretion. He may impose any sentence, which is not cruel and unusual punishment proscribed by Article 16 of the Maryland Declaration of Rights, and which is within the statutorily imposed limitations (if any there be), determined to be deserved for or necessitated by the proven criminal conduct in question. In the pursuit of this indispensable but often perplexing duty, a broad range of information may be mustered by the judge as an aid to his determination. Thus,

> the sentencing judge may inquire into the past criminal record of the defendant and hear evidence and receive reports in aggravation or mitigation of punishment; the inquiry of the judge is not limited by the strict rules of evidence. . . . [In] exercising the discretion vested in him, the procedural policy of

the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background and any other matters that a judge ought to have before him in determining the sentence that should be imposed. [*Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696, 706 (1972); *see also Purnell v. State,* 241 Md. 582, 585, 217 A.2d 298, 299-300 (1966); *Skinker v. State,* 239 Md. 234, 237, 210 A.2d 716, 717-18 (1965).]

In considering what is proper punishment, it is now well-settled in this State that a judge is not limited to reviewing past conduct whose occurrence has been judicially established, but may view "reliable evidence of conduct which may be opprobrious although not criminal, as well as details and circumstances of criminal conduct for which the person has not been tried." *Henry v. State,* 273 Md. 131, 147-48, 328 A.2d 293, 303 (1974). Indeed, since an acquittal does not necessarily establish the untruth of all evidence introduced at the trial of the defendant, the "sentencing judge also may properly consider reliable evidence concerning the details and circumstances surrounding a criminal charge of which a person has been acquitted." *Id.* This broad discretion to appraise multifarious information from multitudinous sources has for some time been recognized to be both a necessary and a desirable requisite to the prevalent modern penal philosophy of individualized punishment. See *Williams v. New York,* 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). Thus, in *Williams,* Mr. Justice Black in speaking for the United States Supreme Court, cogently observed that:

To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. ... In determining whether a defendant shall receive a

one-year minimum or a twenty-year maximum sentence, we do not think the Federal Constitution restricts the view of the sentencing judge to the information received in open court. The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts — state and federal — from making progressive efforts to improve the administration of criminal justice. [*Id.* at 249-51.]

The widespread acceptance of this conceptual model of the penal function of our justice system has few detractors and has resulted in a paucity of restraints being placed on a judge possessing the responsibility to impose punishment, lest he be "forced to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision." *Johnson v. State,* 274 Md. 536, 542, 336 A.2d 113, 116 (1975). Consequently, we stated in *Johnson* that the awesome responsibility of the sentencing judge cannot ordinarily be reevaluated upon appellate review unless the sentence is based upon an impermissible consideration, or imposed in violation of a statute. *Id.* at 538, 336 A.2d at 114. For examples of impermissible considerations, *see Gardner v. Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (due process applies to sentencing proceeding); *United States v. Tucker,* 404 U.S. 443, 448-49, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972) (sentence based in part on previous conviction in violation of right to counsel invalid); *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (limitations on resentencing following reversal on appeal); *Briggs v. State,* 289 Md. 23, 421 A.2d 1369, (1980); Md. Code, Courts and Judicial Proceedings Article (1974, 1980 Repl. Vol.), § 12-702 (b) and (c) (limitations on resentencing following reversal on appeal, and a trial *de novo* after appeal from District Court); *Johnson v. State, supra,* 274 Md. at 542-43, 336 A.2d at 117 (failure of defendant to admit guilt). Placed in this perspective then, petitioner Logan seeks to have this Court lay another

occlusion on the peripheral vision of the sentencing judge by urging that an unconstitutionally procured confession is one such "impermissible consideration." Logan attempts to lead us to this conclusion by contending that the exclusionary rule of the fourth amendment to the federal constitution,[6] *see Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), *rehearing denied,* 368 U.S. 871 (1961), is applicable not solely to the "guilt determination" stage of a criminal trial, but also to the sentencing phase.

The exclusionary rule is a judicially-created requirement of policy "calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960). Over the years since that rule's nascence close to a century ago in *Boyd v. United States,* 116 U.S. 616, 6 S. Ct. 524, 29 L. Ed. 746 (1886), it appears that at least two additional rationales, other than deterrence, have been advanced to support the rule's application to evidence obtained in violation of the fourth amendment. The first, referred to in *Elkins* as the "imperative of judicial integrity," is that "[c]ourts which sit under our Constitution cannot and will not be made party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions. . . . [A]n application of the exclusionary rule withholds the constitutional imprimatur." *Terry v. Ohio,* 392 U.S. 1, 13, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The remaining additional purpose was with clarity expressed in Mr. Justice Brennan's dissent in *United States v. Calandra,* 414 U.S. 338, 357, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974), in which the focus of the rule is perceived as fostering popular respect for and trust in the government by assuring the populace that the authorities would not profit from their

---

**6.** Although the proceedings in the trial court, in the Court of Special Appeals and before this Court are silent as to the breadth of his contention, we conclude Logan's reliance in this regard is on the application of the federal exclusionary rule, as it applies to the conduct of state criminal causes, because he cites and relies only on federal authorities in support of his position.

lawless behavior. It is now aptly recognized that this exploration of the reasons for the exclusionary rule "is of more than academic concern, for the [Supreme] Court's perception of these purposes will determine the scope and, ultimately, the fate of the exclusionary rule." W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* (1978), § 1.1, p. 18. Thus, central to the resolution of the issue which petitioner raises for our consideration — whether that rule should be extended to sentencing proceedings — is what we perceive to be an increasing emphasis by the Supreme Court on the deterrent function as the prime, if not sole, justification for the rule. In *Michigan v. Tucker,* 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974), it was proffered that the imperative of judicial integrity rationale "is really an assimilation of the more specific rationales discussed in the text of this opinion, and does not in their absence provide an independent basis for excluding challenged evidence." *Id.* at 450 n. 25. In *United States v. Janis,* 428 U.S. 433, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976), the Court declared that "the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.' " *Id.* at 446 (quoting from *United States v. Calandra, supra* at 347). *See generally* Project, Tenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1979-1980, 69 Geo. L. J. 211, 305-09 (1980). It follows, then, that the exclusionary rule "is not to be imposed in a vacuum nor . . . administered mechanically. It should be applied in light of its deterrent purpose." *United States v. Vandemark,* 522 F.2d 1019, 1021 (9th Cir. 1975). "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra, supra* at 348. In keeping with this narrowing conception of the application and utility of the rule, the Supreme Court has consistently refused to extend its reach beyond the area traditionally within the rule's purview. *E.g., United States v. Payner,* 447 U.S. 727, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980) (federal court's inherent supervisory power not utilized to exclude evidence obtained by bad faith

hostility to third party's constitutional rights); *United States v. Havens,* 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980) (impeachment of statement of defendant illicited by proper cross-examination); *United States v. Calandra,* 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (grand jury proceedings); *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) (impeachment); *Alderman v. United States,* 394 U.S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969), *rehearing denied, Ivanov v. United States,* 394 U.S. 939 (1969) (use against person other than victim of constitutional violation).

In considering whether to apply the exclusionary rule to grand jury proceedings in *Calandra,* the Court engaged in a balancing process, weighing the potential injury to the historic role and function of the grand jury proceeding against the potential benefits of exclusion in that context. *Id.* at 349-52. Adopting the same analytical framework in considering application of the rule to sentencing hearings, we believe that the incremental gain in deterrence from the rule's utilization, when compared with the forfeiture inherent in depriving the sentencing officer of crucial information, is too slight to justify the *per se* application of the rule in sentencing proceedings. While prohibiting consideration of unreliable evidence in determining a proper sentence stems from well-founded concern for basic fairness, *see United States v. Tucker,* 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948), "[m]ost illegally-obtained evidence . . . is not inherently unreliable." As such, the clear relevance of this information to the sentencing judge's inquiry dictates that there must exist a significant level of deterrence to support the *per se* extension of the rule to sentencing proceedings; such deterrence is elusive. In the words of Judge Winter speaking for a panel of the federal fourth circuit Court of Appeals:

[I]f the exclusionary rule were extended to sentencing in the ordinary case, its additional deterrent effect would be so minimal as to be

insignificant. Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction — not for the purpose of increasing a sentence in a prosecution already pending or one not yet begun. If they are to be deterred from official lawlessness, it would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little practical effect to accomplish its main objective. [*United States v. Lee,* 540 F.2d 1205, 1211 (4th Cir. 1976), *cert. denied,* 429 U.S. 894 (1976).]

We agree, and accordingly conclude that usually the stricture of this Supreme Court doctrine does not extend to the sentencing stage of a criminal cause. *Accord, United States v. Vandemark,* 522 F.2d 1019 (9th Cir. 1975); *United States v. Schipani,* 315 F. Supp. 253, *affirmed,* 435 F.2d 26 (2d Cir. 1970), *cert. denied,* 401 U.S. 983 (1971); *State v. Jones,* 110 Ariz. 546, 521 P.2d 978 (1974) (en banc), *cert. denied,* 419 U.S. 1004 (1974); *State v. Swartz,* 278 N.W.2d 22 (Iowa 1979); *State v. Banks,* 157 N.J. Super. 442, 384 A.2d 1164 (1978); *State v. Campbell,* 43 Or. App. 979, 607 P.2d 745 (1979). We add, however, that where a showing has been made that judicial consideration at sentencing of illegally obtained evidence provides an incentive for illegal official activity, the exclusionary rule may well be applicable. Such incentive may be most readily shown by proof that the unconstitutionally obtained evidence was seized by police officials "with a view toward enhancing the defendant's sentence." *United States v. Lee, supra* at 1212. *Accord, United States v. Vandemark, supra* at 1023-24; *State v. Swartz, supra,* 278 N.W.2d at 26. There being no indication in this record that the obtention of any of the six illegal confessions was motivated for the purpose of influencing the sentencing judge, we conclude that pursuant to · the

discretion vested in him, Judge Fisher could and did properly accord some consideration to the confessions.

## V

Lastly, petitioner Banks complains that he was neither informed of nor afforded his right under Rule 772 d to personally allocute. That Rule directs:

> d. *Allocution.*
>
> Before imposing sentence the court shall inform the defendant that he has the right, personally and through counsel, to make a statement and to present information in mitigation of punishment, and the court shall afford an opportunity to exercise this right.

The short answer to this contention made by Banks is that the failure, if in fact one exists, was not raised in, brought to the attention of, or ruled upon by the trial court; thus, the issue was not before the intermediate appellate court and is not now before this Court. Rule 885. See *Bennett v. State,* 180 Md. 406, 411-12, 24 A.2d 786, 788 (1942).

The record reveals that at the sentencing hearing following his conviction, petitioner's counsel, after presenting two character witnesses, at the time for allocution, thoroughly and competently made an impassioned plea on Banks' behalf in mitigation of punishment. This was followed by the trial judge inquiring: "All right. Does Mr. Banks care to be heard from?" The reply was made by defense counsel in the presence of his client: "No Your Honor." To this answer no objection or other register of disagreement was made by the defendant; nor, after the imposition of sentence, was there any objection noted, motion to strike the sentence or any proceedings initiated to properly present the question to an appellate court. Thus, Banks forfeited his right to appellate review of the allocution issue. *Bennett v. State, supra.*

We note, however, that this ruling will not deprive the petitioner of all possible recourse in his effort to have his designated duration of punishment reduced since the propriety of the sentence imposed remains subject to the revisory power of the trial court under Rule 774, and to analysis under the Review of Criminal Sentence Act, provided for in Md. Code (1957, 1976 Repl. Vol.), Art. 27, §§ 645JA — 645JG and Rule 773.

Accordingly, we will affirm the judgment of the Court of Special Appeals in petitioner Logan's case, and will affirm in part and reverse in part that court's judgment pertaining to petitioner Banks' cause.

> *Judgment of the Court of Special Appeals in No. 24 affirmed.*
>
> *Costs to be paid by Theodore Russell Logan.*
>
> *Judgment of the Court of Special Appeals in No. 36 vacating the sentence imposed on Eugene Jerome Banks reversed, but in all other respects affirmed, and case remanded to that court with instructions to affirm the judgment embodying the conviction and sentence as entered by the Circuit Court for Prince George's County.*
>
> *Costs to be paid by Eugene Jerome Banks.*

*Eldridge, J., dissenting:*

Maryland District Rule 723 is addressed to policemen and judicial officers, and, in mandatory language, it imposes various procedural requirements upon those public officials.[1] These procedures are designed to insure that a

---

1. Maryland District Rule 723, as amended effective July 1, 1979, provides in its entirety:

criminal defendant, soon after arrest, is informed of certain substantive rights and that any waiver of these substantive

"Rule 723. Initial Appearance.

a. *After Arrest.*

A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than 24 hours after arrest. A charging document shall be filed promptly after arrest if not already filed.

b. *Procedure.*

At the initial appearance of the defendant, the judicial officer shall proceed as provided in this section.

1. Advice of Charges.

The judicial officer shall provide the defendant with a copy of the charging document, if he has not already been so provided, and shall inform the defendant of each offense with which he is charged.

2. Advice of Right to Counsel.

The judicial officer shall require the defendant to read the advice of rights to counsel printed on the charging document, in accordance with M.D.R. 711 a (Charging Document — Content — General Requirements), or shall read that advice to the defendant if the defendant is illiterate or for any other reason unable to read that advice himself. The judicial officer shall certify in writing that the defendant has read the advice as to the right of counsel in his presence, or that he has read that information to the defendant, as the case may be.

3. Pretrial Release Determination.

Subject to subsection 4 of this section the judicial officer promptly shall determine the defendant's eligibility for pretrial release pursuant to M.D.R. 721 (Pretrial Release).

4. Probable Cause Determination.

When a defendant has been arrested without a warrant, the judicial officer may not impose conditions of pretrial release which impose a significant restraint on the liberty of the defendant until the judicial officer determines that there is probable cause to believe that the defendant committed an offense. If the judicial officer does not find probable cause, the defendant shall be released on his own recognizance under terms which do not significantly restrain his liberty.

5. Advice of Preliminary Hearing.

When a defendant has been charged with a felony which is not within the jurisdiction of the court and he has not been indicted, the judicial officer shall advise the defendant that he has a right to request a preliminary hearing if the request is made then or within ten days thereafter and that his failure to make a timely request will result in the waiver of a preliminary hearing.

6. Trial or Preliminary Hearing Date.

At the initial appearance of the defendant, if the offense is within the jurisdiction of the court, the judicial officer shall set the date and time for trial, or notify the defendant that he will be so advised by the clerk. If the offense is a felony which is not within the jurisdiction of the court and the defendant at the time of his initial appearance requests a preliminary hearing, the judicial officer shall set the date and time for the preliminary hearing, or notify the defendant that he will be so advised by the clerk.

rights is knowing and voluntary. Among the requirements of M.D.R. 723 is the duty imposed on the police to take the defendant "before a judicial officer without unnecessary delay." Since the original adoption of M.D.R. 723 (previously numbered 709) in 1971, this Court has consistently taken the position that the requirement of prompt presentment in subsection a of the rule is mandatory, and that "any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer" is to be excluded. *Johnson v. State,* 282 Md. 314, 328, 329, 384 A.2d 709, 717 (1978). *See also McClain v. State,* 288 Md. 456, 419 A.2d 369 (1980); *Lewis v. State,* 285 Md. 705, 717-718, 404 A.2d 1073 (1979).

In the present cases, two defendants, unrepresented at the time, after arrest and in the presence of police officers only, initialed and signed a police form which recited so-called *Miranda*[2] warnings, summarized some of the requirements of M.D.R. 723, and contained a police-recorded affirmative answer to the question: "Do you waive your right to an immediate initial appearance until the completion of this interview?" The Court today holds that by initialing the answers and signing the forms, each defendant "waived his right" to be taken before a judicial officer "without unnecessary delay," and that, therefore, confessions taken during periods of unnecessary delay were admissible.[3]

---

    c. *Certification of Judicial Officer.*
    The judicial officer shall certify in writing that he has complied with this Rule.
    d. *Transfer of Papers by Clerk.*
    As soon as practicable after the initial appearance by the defendant, the judicial officer shall file all papers with the clerk of the court or shall direct that they be forwarded to the circuit court if the charging document is filed there."

    **2.** Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

    **3.** It should be noted that the Court holds only that the "without unnecessary delay" requirement of M.D.R. 723 a can be "waived" in the manner which occurred in these cases. The Court does not hold that the other requirement of subsection a, namely that the defendant shall be taken before the judicial officer "in no event later than 24 hours after arrest," is subject to "waiver" in the same manner. In oral argument before us, the State expressly conceded that the right to be taken to a judicial officer no later than 24 hours after arrest could not be "waived" in this manner, and that 24 hours would remain the "outside limit."

This holding, in my view, is inconsistent with our opinion in *Johnson v. State, supra.* The majority overlooks the nature and purpose of M.D.R. 723 and fails to recognize an important difference between a waiver of "*Miranda* rights" and a waiver of the procedural requirements contained in M.D.R. 723.

The literal language of M.D.R. 723 does not itself confer "rights" upon a defendant which are his to "waive." Instead, as previously pointed out, the rule imposes mandatory duties upon police and judicial officers. Nevertheless, I agree that the obligation of the police, under subsection a of the rule, to take an arrestee before a judicial officer "without unnecessary delay," has the effect of conferring upon the arrested defendant a *right* to prompt presentment. Moreover, I accept the proposition, as set forth by the Court in *Johnson,* 282 Md. at 332, that this right is subject to a knowing and intelligent waiver.[4] My disagreement with the majority is over what constitutes such a waiver in light of the nature and purpose of M.D.R. 723.

---

4. For a different view, however, in a case involving the signing of a similar waiver form, *see* United States v. Haupt, 136 F.2d 661, 671 (7th Cir. 1943), where the court, as an alternate ground for its decision, stated (emphasis in original):

"On the second phase of these so-called waivers, the government relies upon cases that an individual may waive such rights as that to trial by jury, to advice of counsel, to a speedy trial, and to be confronted with witnesses against him. In all such cases, however, wherein it has been held that there was or could be a waiver, the court was considering a provision which defined the *rights of the individual.* In both the McNabb and Anderson cases. the court considered statutes that defined the *duties of arresting officers.* How can it be said that one under arrest may waive the duties imposed by law upon the arresting officer? To so permit would mean that the duties of an arresting officer were dependent upon the action of the arrested person, rather than upon the action of Congress. In such case, the statutory requirement might be readily nullified merely by obtaining from the arrested person a so-called 'waiver of custody.' . . ."

A few years later, the Ninth Circuit appeared to take the same position, saying (Dainard v. Johnston, 149 F.2d 749, 751 (9th Cir. 1945), *cert. denied,* 326 U.S. 783, 66 S. Ct. 331, 90 L. Ed. 474 (1946)):

"It appears that Dainard signed a paper . . . upon its face purporting to waive the necessity of his being taken before a magistrate. We do not regard this circumstance as of great importance in the disposition of this proceeding. The officers' duty cannot be so avoided. . . ."

In reviewing M.D.R. 723, this Court in *Johnson v. State,* *supra,* initially stated that "the purpose of the rule is to insure that an accused will be promptly afforded the full panoply of safeguards provided at the initial appearance." 282 Md. at 321. The Court then summarized the "procedural components" of the rule, pointed to several substantive rights which the procedures were designed to protect, and emphasized the role of the District Court commissioner as a neutral judicial officer (*id.* at 321-322, emphasis supplied):

"The procedural components of the initial appearance are set forth in M.D.R. 723 b. Chief among these protections is the constitutionally compelled requirement of M.D.R. 723 b 4 that all persons arrested without a warrant be afforded a prompt hearing at which *a neutral judicial officer* must determine whether sufficient probable cause exists for the continued detention of the defendant. . . . Of equal importance is the provision of M.D.R. 723 b 3 obligating a *commissioner* at the initial appearance to make a determination of the defendant's eligibility for pretrial release . . . .

"A third function of the initial appearance is to inform the accused of every charge brought against him and to inform him of his right to counsel, and, if indigent, to have counsel appointed for him. . . . Further, where the defendant has been charged with a felony over which the District Court lacks subject matter jurisdiction, the *commissioner* conducting the initial appearance must notify the accused of his right . . . to request a full preliminary

---

In the present case, the majority states that the *Haupt* opinion has received "sparce acceptance, if any at all," citing United States v. Grote, 140 F.2d 413, 415 (2d Cir. 1944), and a law review note indicating that *Haupt* was no longer authoritative after United States v. Mitchell, 322 U.S. 65, 64 S. Ct. 896, 88 L. Ed. 1140 (1944). Although the court in *Grote* indicated disagreement with *Haupt,* the decision itself is not in conflict as Grote's statements were made to the police prior to his arrest. *Mitchell* did not involve a waiver question, and the confession was *not* made during a period of illegal or unnecessary delay. In fact, the Supreme Court in *Mitchell* cited *Haupt* as an application of the *McNabb* doctrine which the Government did not challenge. 322 U.S. at 68.

hearing. ... If such a request is forthcoming, the *commissioner* must assign a date and time for the preliminary hearing. ... Finally, where the crime is one within the District Court's jurisdiction, the *presiding judicial officer* must fix the date for trial. ...

"The procedural requirements of M.D.R. 723 b bolster in substantial fashion several fundamental constitutional guarantees, including the right of a defendant to be informed of the accusation against him ...; the right to be free from unauthorized and unreasonable seizures of his person ...; the right to be allowed counsel ..., and to have counsel appointed for him if indigent ..., as well as the due process right to be free from coercive investigatory methods. ... "

This Court then concluded (*id.* at 323, emphasis supplied):

"Prompt presentment after arrest assures *impartial judicial supervision of the defendant's rights at the earliest possible stage of detention.* Accordingly, we hold that the prompt presentment requirement of M.D.R. 723 a is mandatory and was therefore binding on the police in the instant case."

Today, in holding that the defendants "waived" their right to prompt presentment by signing a form before only the police, the majority overlooks the central role of the neutral judicial officer. The purpose of the rule is not satisfied if *ultimately* a judicial officer informs the defendant of various rights. Instead, as made clear by this Court just three years ago in *Johnson,* the rule is designed to assure "impartial judicial supervision of the defendant's rights at the earliest possible stage of detention." 282 Md. at 323. The majority today states that the "effectiveness of the prompt appearance waiver" is not destroyed because "a suspect was preliminarily informed of his rights by the police rather than a judicial officer." This, in effect, upholds the substitution of the policeman for the judicial officer. It

reflects a view of M.D.R. 723 which is totally at odds with the nature and purpose of the rule set forth in *Johnson v. State.*

The majority opinion places great reliance upon the statement in *Johnson,* 282 Md. at 332, that a defendant may waive his right to a prompt appearance. However, the majority ignores the context of the statement in *Johnson* concerning waiver and the underlying reasoning in *Johnson.* The statement in *Johnson* regarding waiver was made in the context of a holding that the waiver of *Miranda* rights does not waive the right under Rule 723 a to be brought promptly before a judicial officer. 282 Md. at 330-332. The initial reason for this holding was that the policeman is *not* a substitute for the judicial officer. Thus, Judge Levine stated for the Court in *Johnson* (*id.* at 331-332, emphasis supplied):

"This argument [that a waiver of *Miranda* rights waives the right to prompt presentment] in our opinion is based on a false premise, that *Miranda* and the prompt presentment requirement have a common purpose. The fact of the matter is that *Miranda* was never intended to supplant the *Mallory* rule, as the Supreme Court itself acknowledged in the *Miranda* opinion. *Miranda v. Arizona,* 384 U.S. at 463 n. 32. One jurist has commented that it is unsound to treat *Miranda* and *Mallory* as closely related, since the former is a qualitative test of the circumstances of the interrogation, while the latter focuses on the duration of time delay. *Frazier v. United States,* 419 F.2d at 1171 (Burger, J., dissenting).

"To be sure, one important function of the initial appearance is to advise an arrestee of his right to counsel; to this extent there is a partial overlap with *Miranda.* Even so, it has been convincingly argued that *the typically perfunctory reading of Miranda warnings by police at the time of arrest may be insufficient to provide the accused with adequate notice of his constitutional rights; and that a need exists for follow-up advice of the basic*

*right to counsel by a neutral officer of the court, such as is provided by M.D.R. 723 b 2. Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701, 703 (1973). Note, 79 Dick. L. Rev. 309, 348 (1975)."

The Court today effectively overrules the above-quoted holding and reasoning in *Johnson*. What was said by Judge Levine in *Johnson* is equally applicable to the instant cases. Although two more paragraphs were attached to the standard *Miranda* warnings here, nevertheless each alleged "waiver" was still based on a "typically perfunctory reading" of warnings by the police. 282 Md. at 331. There was no prompt follow-up "by a neutral officer of the court," *id.* at 332. Any defendant who will sign a form reciting that he is willing to make a statement and that he does not want a lawyer (*i.e.,* the waiver of *Miranda* rights), will most likely sign the form with the addition of the language indicating that he will make the statement without being taken promptly to a District Court commissioner. With today's decision, every police department in Maryland, by modifying the standard *Miranda* form, can ignore its legal duty to take an arrested defendant to a judicial officer "without unnecessary delay."

The majority observes that "there is a substantial body of judicial authority from other jurisdictions" which holds that a prompt presentment requirement like that in M.D.R. 723 a can be waived. This, of course, is not the issue dividing the Court today. It is accepted that the defendant's right to prompt presentment can be waived; the real issue concerns what constitutes a waiver. However, the cases relied on by the majority are, for the most part, from jurisdictions which, contrary to *Johnson,* hold that a waiver of *Miranda* rights amounts to a waiver of the right to prompt presentment. *See United States v. Indian Boy X,* 565 F.2d 585, 591 (9th Cir. 1977), *cert. denied,* 439 U.S. 841, 99 S. Ct. 131, 58 L. Ed. 2d 139 (1978); *United States v. Lopez,* 450 F.2d 169, 170 (9th Cir. 1971), *cert. denied,* 405 U.S. 931, 92 S. Ct. 985, 30 L. Ed. 2d 805 (1972); *Frazier v. United States,* 419 F.2d 1161, 1166

(D.C. Cir. 1969); *Pettyjohn v. United States,* 419 F.2d 651, 656-657 (D.C. Cir. 1969), *cert. denied,* 397 U.S. 1058, 90 S. Ct. 1383, 25 L. Ed. 2d 676 (1970); *People v. Weaver,* 179 Colo. 331, 334, 500 P.2d 980, 982 (1972) (en banc); *Hawkins v. United States,* 304 A.2d 279, 281 (D.C. 1973); *Richmond v. State,* 554 P.2d 1217, 1229 (Wyo. 1976). Consequently, if *Johnson* is to remain fully viable, the cited cases furnish no support for the decision in the instant cases.[5]

The Court's opinion treats the waiver of M.D.R. 723 rights like most other waiver situations, stating that if various substantive rights can be waived by signing a form before a policeman, the right of prompt presentment under Rule 723 can "similarly be made to police officers." The majority, citing *Miranda v. Arizona,* points out that the circumstances of the present cases "are normally sufficient to support a valid waiver of the fundamental constitutional right to counsel and privilege against self-incrimination." This approach, in my view, overlooks an essential difference between the so-called waiver of *Miranda* rights or other fundamental rights and the waiver of procedural "rights" like those under M.D.R. 723.

In *Miranda v. Arizona,* the Supreme Court mandated a particular procedure to protect an arrested defendant's right against self-incrimination and right to counsel. 384 U.S. at 444. Although indicating that the underlying substantive rights involved could be waived by the defendant's answers to the police, *id.* at 444-445, the Supreme Court did not say that the *procedure* could be waived in a like manner. There was no suggestion that an unrepresented lay defendant, by signing a form, could relieve the custodial policemen of their obligation to follow the required procedure, thereby

---

5. In *Johnson* itself, we acknowledged that our position was contrary to the majority of state courts, 282 Md. at 324, and that "[e]ven the [lower] federal courts ... have all but jettisoned the per se exclusionary rule in favor of a voluntariness standard in all cases," *ibid.* n. 5. Despite the array of contrary authority, we were convinced in *Johnson* that the view we there adopted, following the lead of the United States Supreme Court in Mallory v. United States, 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957), and McNabb v. United States, 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943), was the sound position.

"waiving" the defendant's "right" to that procedure. On the contrary, the Court indicated that the only alternatives to the mandated procedure were means that would be as "fully effective" to attain the same results.[6] Consequently, when a court refers to a waiver of *Miranda* rights, it is speaking of a waiver of the substantive rights against self-incrimination and to counsel and *not* a waiver of the defendant's "right" to have compliance with the *Miranda* procedure. I am aware of no case holding that the *procedure* required by *Miranda* was "waived" under circumstances that would be analogous to the facts of the present cases.

Many other statutes, rules or court decisions prescribe procedures designed to inform a criminal defendant of fundamental rights, thereby insuring that any waiver of those fundamental rights is voluntary, knowing and intelligent. Very often the procedural requirements go beyond what is constitutionally necessary. For example, Maryland Rule 735 imposes detailed mandatory procedural requirements upon a trial judge, for the purpose of insuring that a defendant's waiver of his fundamental right to a jury trial is voluntary, knowing and intelligent. Rule 735, like M.D.R. 723, grants a defendant procedural rights going beyond the constitutional requirements for waiver of the

---

**6.** The Supreme Court thus stated in *Miranda* (394 U.S. at 444-445, emphasis supplied):

"As for the procedural safeguards to be employed, *unless other fully effective means are devised* to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, *the following measures are required.* Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned."

substantive right. *Countess v. State,* 286 Md. 444, 453, 408 A.2d 1302 (1979). No one would seriously suggest, I submit, that a defendant could validly "waive" the *procedural* rights and requirements under Rule 735 merely by signing a form which recited the provisions of Rule 735 and purported to relieve the trial judge of his duties under the rule.

In sum, the majority overlooks a major difference between the waiver of "fundamental" rights and the waiver of what the majority opinion calls a "prefatory" requirement designed to insure that the defendant be informed of the fundamental right. In light of the language in some statutes or rules setting forth "prefatory" rights and their underlying purposes, it is likely that many such rights would not be considered susceptible of "waiver." At any rate, a "waiver" of or dispensing with a mandatory "prefatory" or procedural requirement should not be deemed valid unless the purpose of the requirement is met. As the Supreme Court stated in *Miranda,* the only exception to the *procedure* there required would be if "other fully effective means are devised," 384 U.S. at 444.

As previously discussed, a major purpose of the M.D.R. 723 right to prompt presentment after arrest is to assure "impartial judicial supervision of the defendant's rights at the earliest possible stage of detention." *Johnson v. State, supra,* 282 Md. at 323. The prompt presentment requirement, to some extent, reflects the policy determination that a "perfunctory reading" of rights and warnings by the police "may be insufficient to provide the accused with adequate notice of his constitutional rights; and that a need exists for follow-up advice" by a "neutral officer of the court." *Id.* at 331-332. To uphold the purported "waivers" by the defendants in the present cases totally defeats this purpose. This is not to suggest that the right to prompt presentment cannot be waived. For example, if the defendant were being represented by and advised by competent counsel at the time he signed the police "waiver" forms, the purpose of having a neutral officer of the court inform him of his substantive rights might well be achieved.

But permitting the police to avoid the mandatory prompt presentment requirement of M.D.R. 723 a under the circumstances of these cases cannot be squared with the purpose of the rule as set forth in *Johnson.*

I suspect that this Court would not give many other mandatory "prefatory" or procedural requirements the same treatment that it gives the requirement of prompt presentment before a judicial officer. I doubt very much that the policeman's duty to follow the *Miranda* procedure, the judge's duty to comply with Rule 735, etc., could be "waived" as easily. It is possible that the treatment accorded the prompt presentment requirement by this and other courts stems from a degree of disagreement with the purposes and policies underlying the requirement. If there is such general policy disagreement (and I do not now intimate any views of my own regarding the matter), the proper remedy is for this Court in its constitutionally authorized rule-making capacity, or the Legislature, to modify the rule. However, as long as the rule remains unchanged, courts should require compliance with its purposes.

Judges Cole and Davidson have authorized me to state that they concur with the views expressed herein.